IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

WILLIAM BARRICKMAN,            )
                               )
                Plaintiff,    )
                               )
      vs.                      )
                               )
LOCALS 302 AND 612 OF THE      )
INTERNATIONAL UNION OF OPERATING )
ENGINEERS-EMPLOYERS CONSTRUCTION )
INDUSTRY RETIREMENT FUND,      )
                               )    No. 3:14-cv-0051-HRH
                Defendant.    )
_____)

O R D E R

Cross-Motions for Summary Judgment

Defendant moves for summary judgment.[1] This motion is opposed and plaintiff cross-moves for summary judgment.[2] Oral argument has been heard.

Facts

Plaintiff is William Barickman.[3] Defendant is Locals 302 and 612 of the International Union of Operating Engineers - Employers Construction Industry Retirement Plan.

---

[1]Docket No. 13.

[2]Docket No. 24.

[3]The correct spelling of plaintiff's last name is "Barickman" not "Barrickman."

-1-

Plaintiff worked out of Local 302 as "a journeyman operating engineer performing road construction"[4] for 19 years. Plaintiff operated dozers, loaders, backhoes, and excavators.[5]

Plaintiff was a participant in the Plan, which is an ERISA plan. The Plan is governed by a Board of Trustees.

On June 14, 2012, plaintiff submitted an application for retirement benefits under the Plan.[6] Plaintiff applied for early retirement to be effective August 1, 2012.[7] In his application, plaintiff advised that he was currently employed by the Mat-Su Borough as a road superintendent.[8]

In order to be entitled to early retirement benefits, a plan participant may not "perform 51 or more hours of Post-Retirement Service in a calendar month[.]"[9] The Plan defines "Post-Retirement Service" as

    all employment:

---

[4] Admin. Rec. at 173, Docket No. 9.

[5] Admin. Rec. at 153-154, Docket No. 9.

[6] Admin. Rec. at 124, Docket No. 9.

[7] Admin. Rec. at 124, Docket No. 9.

[8] Admin. Rec. at 126, Docket No. 9.

[9] Admin. Rec. at 44, Docket No. 9.

> (a) within the geographic area covered by the Plan which for purposes of this Section shall consist of all of the State of Alaska and the State of Washington;
>
> (b) in a job classification in which the Participant was employed while in a Covered Employment, whether or not such employment is under the terms of a Collective Bargaining Agreement or written Contribution Agreement or in a supervisory capacity over such job classification; and
>
> (c) in the industry in which the Individual Employers participate (any business activity of the type engaged in by the Individual Employers maintaining the Plan).[10]

On August 3, 2012, the Plan Administration Office advised plaintiff that his application for early retirement benefits was being denied because "it has been determined that your work at the Matanuska-Susitna Borough is considered to be Post Retirement Service."[11] Plaintiff was advised that he had "the right to request an appeal hearing before the Board of Trustees" as long as a request for such a hearing was filed within 60 days.[12] This was consistent with the Plan's appeal procedures, which provide that "[a]ny Participant ... who applies for benefits and is ruled ineligible ... shall have the right to appeal to and request that the Board of Trustees conduct a hearing in the matter."[13]

---

[10] Admin. Rec. at 45, Docket No. 9.

[11] Admin. Rec. at 130, Docket No. 9.

[12] Admin. Rec. at 130, Docket No. 9.

[13] Admin. Rec. at 81, Docket No. 9.

On August 17, 2012, plaintiff requested an appeal hearing before the Board of Trustees.[14] Plaintiff contended that his "covered employment" with Local 302 did not include administrative work which was the type of work he did in his current job with the Mat-Su Borough.[15]

On September 10, 2012, counsel for the Plan provided plaintiff with "additional information regarding the appeal procedures."[16] In addition to providing plaintiff with information about how the hearing would be conducted, counsel for the Plan advised plaintiff that

> [f]ollowing the hearing, the Trustees will issue a written decision. If you are dissatisfied with the written decision of the Trustees, you may bring a civil action under Section 502(a) of [ERISA]. A civil action must be brought no later than 180 days after the date on which the Trustees' decision is issued.[17]

The appeal hearing was held on September 24, 2012.[18] On October 1, 2012, the Trustees denied plaintiff's appeal because they "determine[d] that [plaintiff's] work as a Road Superintendent I satisfies Plan Sections 6.01(a),(b), and (c) and is therefore Post-

---

[14]Admin. Rec. at 132, Docket No. 9.

[15]Admin. Rec. at 134, Docket No. 9.

[16]Admin. Rec. at 138, Docket No. 9.

[17]Admin. Rec. at 138, Docket No. 9.

[18]Admin. Rec. at 172, Docket No. 9.

Retirement Service for which benefits would be suspended if he retired."[19] The Trustees explained that they "have consistently given a broad interpretation to the term 'job classification'" and that "[i]n interpreting the term, [they] have compared the duties and skills used by the participant."[20] Using this "skills and duties" test, the Trustees concluded that plaintiff was using skills that he acquired as a journeyman operator to perform his job as a Road Maintenance Superintendent I and that he had many of the same duties in that job as he had as a journeyman operator.[21]

The cover letter transmitting the Trustees' decision advised plaintiff that if he was "dissatisfied with the Trustees' determination, [he could] bring a civil action under Section 502(a)" of ERISA and that any such action "must be brought no later than 180 days after the date of this letter."[22] Plaintiff was further advised that "[f]ailure to file a civil action within that 180-day period will operate as a waiver of and bar to the right to review, and the decision of the Trustees shall be final and binding."[23] This is consistent with the appeal procedures set forth in Section 12.02 of the Plan, which provide that

---

[19] Admin. Rec. at 179, Docket No. 9.

[20] Admin. Rec. at 178, Docket No. 9.

[21] Admin. Rec. at 178-179, Docket No. 9.

[22] Admin. Rec. at 171, Docket No. 9.

[23] Id. Plaintiff was also advised of the 180-day time limit in which to file a civil action in connection with the initial denial of his application for early retirement benefits. Admin. Rec. at 131, Docket No. 9.

> [f]ollowing issuance of the written decision of the Trustees on an appeal, there is no further right of appeal to the Trustees. Instead, the claimant may bring a civil action under ERISA, § 502(a). Any action must be brought no later than 180 days after the date on which the Trustees' decision was issued. Failure to file a civil action within that 180-day period will operate as a waiver of and bar to the right of review, and the decision of the Trustees will be final and binding.[24]

The Plan further provides that

> [t]he procedure specified in [Section 12.02] shall be the sole and exclusive procedure available to a Participant or beneficiary who is dissatisfied with an eligibility determination, benefit award, or who is adversely affected by any such action of the Trustees.[25]

Plaintiff did not file a civil action within 180 days of October 1, 2012, the date on which the Trustees made their decision. Plaintiff alleges that he "did not do so because he was aware of the Alaska U.S. District Court's decision denying a similar appeal in a case against the same 'Plan' ... and therefore reasonably believed such an appeal in a lawsuit in the Alaska U.S. District Court would be futile."[26]

The district court case in question was Tapley v. Locals 302 and 612 of International Union of Operating Engineers-Employers Construction Industry Retirement Plan, Case No. 3:10-cv-0033-HRH. There, this court upheld the Trustees' determination that the plaintiffs'

---

[24] Admin. Rec. at 104, Docket No. 9.

[25] Admin. Rec. at 84, Docket No. 9.

[26] Complaint at 4, ¶ 15, Docket No. 1.

"post-retirement jobs as a traffic flagger and snow plow operator fell into the same 'job classification' as their former union jobs as skilled mechanics." Tapley v. Locals 302 and 612 of International Union of Operating Engineers-Employers Construction Industry Retirement Plan, 728 F.3d 1134, 1136 (9th Cir. 2013). The Ninth Circuit reversed. The appellate court took issue with the Trustees' application of their "skills and duties" test because the test was based on "insignificant and incidental similarities" between Tapley's and Chapman's union jobs and their post-retirement jobs "[r]ather than acknowledging th[e] significant difference in core skills used for each job...." Id. at 1141-42. Because the court was "unable to see how any sensible application of the skills and duties test to the established facts c[ould] support the Trustees' conclusion", it reversed. Id. at 1143.

Upon remand, the Trustees determined that Tapley and Chapman were entitled to early retirement benefits.[27] As to any "retirement applications initially received or eligible for appeal on or after September 6, 2013, and not otherwise barred by the applicable statute of limitations or contractual limitations periods," the Trustees were "enjoined from denying retirement benefits to participants engaged in post-retirement employment, based on a definition of 'job classification' using their incidental duties of post-retirement occupations to place them under the same 'job classification' as covered employment[.]"[28]

---

[27]See Final Judgment, Case No. 3:10-cv-0033-HRH at 1-2, Docket No. 108.

[28]Id. at 2.

On November 11, 2013, plaintiff filed a new application for early retirement benefits to be effective January 1, 2014.[29] Plaintiff advised that he was still working for the Mat-Su Borough "as a road superintendent."[30] Plaintiff's new application was accompanied by a letter from his counsel. In that letter, plaintiff's counsel requested that the Trustees "reconsider and reverse their decision in the Barickman appeal decided on 9/24/12."[31] If the Trustees declined to reconsider their 2012 decision, plaintiff's counsel advised that plaintiff would "press the new application as far as it takes to obtain [plaintiff] his earned benefits under the plan."[32]

On December 31, 2013, defense counsel advised plaintiff's counsel that plaintiff was "time-barred from further consideration of the Trustees' determination that his position as a Road Superintendent I for the Matanuska-Susitna ... Borough is Post-Retirement Service."[33] As for plaintiff's new application for retirement benefits, defense counsel

---

[29]Admin. Rec. at 184, Docket No. 10.

[30]Admin. Rec. at 186, Docket No. 10.

[31]Admin. Rec. at 182, Docket No. 10.

[32]Admin. Rec. at 182, Docket No. 10.

[33]Admin. Rec. at 187, Docket No. 10.

advised that plaintiff was "not entitled to reconsideration of the identical issue by simply filing a new retirement application."[34]

In a January 23, 2014 response, plaintiff's counsel suggested that plaintiff's request for reconsideration was not time-barred because the 180-day period might be considered "unreasonably short[.]"[35] Plaintiff's counsel also contended that plaintiff was "entitled to a hearing before the trustees" on his new application for retirement benefits.[36] Plaintiff's counsel requested that "[i]f you are denying him the right to appeal any denial of benefits this year, please do so in writing so we can advise the court we were denied an appeal procedure."[37]

On February 11, 2014, defense counsel advised that

> [t]he Trust is not denying Mr. Barickman the right to appeal any denial of benefits. As indicated in our December 31, 2013 letter, Mr. Barickman previously had an appeal on the determination that he is working in Post-Retirement Service. The Trustees reviewed that appeal and Mr. Barickman was given 180 days to bring a civil action. He did not file a civil action within that time period. Accordingly, Mr. Barickman already exercised his right of appeal on that issue.... Mr. Barickman is not entitled to a second appeal on that issue.
> If there is an issue, other than that concerning whether Mr. Barickman is working in Post-Retirement Service which

---

[34]Admin. Rec. at 188, Docket No. 10.

[35]Admin. Rec. at 190, Docket No. 10.

[36]Admin. Rec. at 190, Docket No. 10.

[37]Admin. Rec. at 190, Docket No. 10.

was previously appealed, then Mr. Barickman should submit
a request for an appeal according to the Plan's appeal procedures.[38]

On March 18, 2014, plaintiff commenced this ERISA action. In his complaint, plaintiff seeks to have the court either rule that he is entitled to benefits or remand this matter to the Trustees for a hearing on his second application. Plaintiff also seeks to enjoin the Trustees from broadening the definition of "job classification" and from denying plan participants the right to reapply for pension benefits following the Tapley decision.

Defendant now moves for summary judgment dismissing plaintiff's complaint on the grounds that it is time-barred by the 180-day contractual limitations period. Plaintiff cross-moves for summary judgment on the issue of whether the Trustees abused their discretion by not allowing him to reapply for benefits because of the change in plan interpretation. Alternatively, plaintiff argues that his complaint is not barred by the statute of limitations. In his opposition and cross-motion, plaintiff contends that "the main issue for the [c]ourt is whether changes in plan interpretation, like changes in fact, permit a participant to file a new application for benefits" and that "[t]he merits of the Trustees['] decision to deny benefits to [him] is not presently before the [c]ourt."[39]

---

[38]Admin. Rec. at 191, Docket No. 10.

[39]Plaintiff's Memorandum [etc.] at 2-3 & 9, Docket No. 24.

-10-

Discussion

The traditional summary judgment standards apply to an ERISA statute of limitations summary judgment motion. Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1031 (9th Cir. 2006). The court views "the evidence 'in the light most favorable to the nonmoving party ... [and] determine[s] whether there are any issues of material fact....'" Id. (quoting Wetzel v. Lou Ehlers Cadillac, 222 F.3d 643, 646 (9th Cir. 2000)).

"There are two parts to the determination of whether a claimant's ERISA action is timely filed[.]" Withrow v. Halsey, 655 F.3d 1032, 1035 (9th Cir. 2011). The court "must determine first whether the action is barred by the applicable statute of limitations, and second whether the action is contractually barred by the limitations provision in the policy." Id. The only issue here is whether plaintiff's action is barred by the 180-day contractual limitations period.

There is no dispute that the Plan provides that a participant has 180 days in which to file a civil action if he wishes to appeal a decision by the Trustees. Defendant argues that plaintiff is seeking review of the Trustees' October 1, 2012 decision to deny him early retirement benefits and because plaintiff's complaint was filed more than 180 days after October 1, 2012, it was time barred.

The court "must give effect to the Plan's limitations provision unless [it] determine[s] ... that the period is unreasonably short[.]" Heimeshoff v. Hartford Life &

Acc. Ins. Co., 134 S. Ct. 604, 612 (2013). Plaintiff argues that the 180-day contractual limitations period is unreasonably short. In support of his argument, plaintiff cites to Baptist Memorial Hospital--DeSoto Inc. v. Crain Automotive Inc., Case Nos. 08-60949, 08-61119, 2010 WL 3278258, at *5 (5th Cir. Aug. 19, 2010). There, the court found a one-year contractual limitations period too short for two reasons. "First the one-year limitations period begins to run when a participant merely files a completed claim, potentially long before the claimant's ERISA cause of action even accrues." Id. The court explained that "the Crain Plan's claim and internal appeal procedures could take as long as 330 days, leaving an unsatisfied claimant with only 35 days to file suit." Id. Second, the court found that the plan administrator had led "BMHD to believe that its claim was actively under consideration," even when it was not. Id. at *6.

Plaintiff's reliance on Crain Automotive is misplaced because the primary reason the court found the one-year contractual limitations period unreasonable was because the limitations period began to run prior to the completion of the administrative process. Here, the 180-day period does not begin to run until a Plan participant has exhausted all of his administrative remedies. And, unlike in Crain Automotive, the Trustees were not providing plaintiff with misleading information about the status of his claim.

Plaintiff next argues that the 180-day limitations period is unreasonable because it is shorter than what is usually provided for by statute. But, as defendant points out, there

-12-

are statutory limitations periods that are shorter than 180 days. See 42 U.S.C. § 2000e-16(c) (90-day period for federal employees to file a EEOC lawsuit); 42 U.S.C. § 1395ff(b)(2)(C) (60-day period for appeal of Medicare determinations); 42 U.S.C. § 405(g) (60-day period in which to seek judicial review of Social Security benefits decisions).

Plaintiff also seems to suggest that a 180-day contractual limitations period is unreasonably short because six months is not enough time for a Plan participant to retain counsel, which plaintiff contends is a necessary requirement for filing a civil action. But six months is sufficient time in which to retain counsel.

The court finds the 180-day contractual limitations period reasonable for the same reasons the court in <u>Northlake Regional Medical Center v. Waffle House System Employee Benefit Plan</u>, 160 F.3d 1301 (11th Cir. 1998), found a 90-day limitation period reasonable.

> First, nowhere in the record is there any suggestion that the Plan's 90–day limitations period was a subterfuge to prevent lawsuits. Unlike an insurance company, the Plan does not exist to make a profit. It is funded by contributions from participating employees and the employer, not by a contract of insurance with a third-party issuer.

<u>Id.</u> at 1304. Similarly here, there is no evidence in the record that the 180-day period was intended to prevent lawsuits. "Second, the 90–day limitations period is commensurate with other Plan provisions that are designed to process claims with dispatch." <u>Id.</u> Here too, the Plan makes provision for prompt claim decisions. And third,

>[t]he 90–day limitations period in this case did not begin to run until after the last stage of this administrative process, the Plan Trustees' decision on review. The time required by the Plan's internal appeals process (ten months here) plus the additional ninety days of the limitations period provided an adequate opportunity for Northlake to investigate the claim and file suit.

Id. Here, as discussed above, the 180-day limitations period does not begin to run until all administrative remedies have been exhausted. Thus, plaintiff's claim that the Trustees should have reconsider their original decision to deny him retirement benefits is barred by the statute of limitations.

As for plaintiff's second application for retirement benefits, plaintiff argues that the Trustees abused their discretion when they refused to consider his second application because they denied him meaningful access to the Plan's administrative procedures. Under the abuse of discretion standard, "a plan administrator's decision 'will not be disturbed if reasonable.'" Stephan v. Unum Life Ins. Co. of Amer., 697 F.3d 917, 929 (9th Cir. 2012) (quoting Conkright v. Frommert, 559 U.S. 506, 521 (2010)). "This reasonableness standard requires deference to the administrator's benefits decision unless it is '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" Id. (quoting Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011)).

"Under ERISA, plan administrators must follow certain practices when processing and deciding plan participants' claims." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955,

-14-

971 (9th Cir. 2006). According to ERISA's procedural requirements, claims procedures must "contain administrative processes and safeguards to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents...." 29 C.F.R. § 2560.503–l(b)(5).

Although the Plan contains detailed claims procedures, there is no provision in the Plan for filing a second application for retirement benefits if the participant's first application has been denied. But, the Trustees have suggested that a change in circumstance might be a sufficient reason to allow a participant to file a second application. In the December 31, 2013 letter to plaintiff's counsel, defense counsel wrote that "[t]here has been no suggestion that Mr. Barickman's employment status changed after the Trustees found he is working in Post-Retirement Service. Accordingly, the Trustees' prior determination is final and binding and Mr. Barickman is not entitled to reconsideration of the identical issue...."[40] This suggests that if plaintiff had changed jobs or quit his job, he could reapply for retirement benefits because the prior decision that his job as a Road Maintenance Superintendent I was disqualifying would not apply to a different job or would not apply if he had no job. At oral argument, defense counsel confirmed that it was the Trustees' position that if plaintiff had changed jobs or if there had been some other significant change in circumstances, the Trustees would have considered plaintiff's second application.

---

[40]Admin. Rec. at 188, Docket No. 10.

Plaintiff argues that the Tapley decision constitutes a significant change in circumstances and thus the Trustees should have considered his second application on its merits. Defendant disagrees.

Defendant argues that the Plan's definition of "job classification" was not amended after the Ninth Circuit's decision in Tapley and that the Trustees did not stop using the "skills and duties" test that it had used prior to Tapley to determine if post-retirement employment was the same "job classification" as covered employment. Defendant argues that just because the skills and duties in Tapley were too incidental that does not mean that the skills and duties in plaintiff's case are also too incidental. In fact, defendant insists that there was a significant overlap between the core skills and duties plaintiff used as a equipment operator constructing roads and the core skills and duties plaintiff uses as a Road Maintenance Superintendent I. In short, defendant argues that nothing changed in how the Trustees' interpret the Plan after Tapley and thus the Tapley decision is not a significant change in circumstances.

The court disagrees. Prior to Tapley, the Trustees were employing a "skills and duties" test that was based on incidental duties, rather than core duties. After Tapley, the Trustees may no longer look at incidental duties to determine whether a Plan participant's covered employment is in the same job classification as the participant's post-retirement work. This is a significant change in how the Trustees will evaluate whether a Plan

participant's post-retirement employment is in the same "job classification" as his covered employment. Because the Tapley decision was a significant change in circumstances and because the Trustees interpret the Plan to allow a Plan participant to reapply for benefits if there has been a significant change in circumstances, it was an abuse of discretion for the Trustees to not consider plaintiff's post-Tapley application for early retirement benefits.

## Conclusion

Defendant's motion for summary judgment is granted as to plaintiff's claim that the Trustees should have reconsidered their original decision to deny him retirement benefits. Defendant's motion for summary judgment is otherwise denied. Plaintiff's cross-motion for summary judgment is granted as to his claim that the Trustees abused their discretion in failing to consider his second application on its merits. Plaintiff's cross-motion is otherwise denied.

The matter is remanded to the Trustees to consider plaintiff's second application for early retirement benefits on its merits.

DATED at Anchorage, Alaska, this 26th day of January, 2015.

/s/ H. Russel Holland
United States District Judge